# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KELVIN LOVETT,
      Plaintiff,

vs.

BRIAN BARNEY, et al.,
      Defendants.

Case No. 1:15-cv-24
Barrett, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff Kelvin Lovett, an inmate at the Southern Ohio Correctional Facility ("SOCF")

proceeding pro se, filed this prisoner civil rights action under 42 U.S.C. § 1983 alleging that

defendant SOCF employees Correctional Officer Brian Barney and Lt. Robert Setty used

excessive force against him in retaliation for his use of prison grievance procedures. (Doc. 3).

This matter is before the Court on plaintiff's motion for summary judgment (Doc. 108),

defendants' response in opposition (Doc. 114), and plaintiff's reply memorandum (Doc. 116), as

well as defendants' motion for summary judgment (Doc. 127), plaintiff's response in opposition

(Doc. 128), and defendants' reply memorandum (Doc. 129). This matter is also before the Court

on plaintiff's motion for a hearing (Doc. 130).

## I. Plaintiff's Motion for a Hearing (Doc. 130)

Plaintiff requests a hearing to respond in person to defendants' motion for summary

judgment before the Court rules. (*See* Doc. 130 at 1). However, the Court finds that the legal

and factual issues involved in this case are not complex, and they have been fully briefed by the

parties. Thus, pursuant to S.D. Ohio Civ. R. 7.1, the Court finds that oral argument is not

"essential to the fair resolution" of this case, and plaintiff's motion for a hearing is denied.

## II. The Motions for Summary Judgment (Docs. 108, 127)

### A. Facts

In his motion for summary judgment, plaintiff argues that there is no genuine issue of material fact and defendants are not entitled to qualified immunity. (Doc. 108). In their motion for summary judgment, defendants argue there is no genuine issue of material fact, that they are entitled to qualified immunity, and that plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 127).

The Court has gleaned the relevant facts from the parties' submissions. Because the majority of the facts surrounding the excessive force incident giving rise to this lawsuit are disputed, each party's version of the facts is set forth separately. After summarizing these versions of the facts, the Court will separately describe the available video and photographic evidence.

#### 1. Defendants' version

On September 17, 2014, SOCF Correctional Officer Brian Barney assisted with recreation duty. (Declaration of Brian Barney, Doc. 127-2, Exh. B at ¶ 4). The inmates assigned to recreation that day were divided into two groups for transport to the recreation cages. (*Id.* at ¶ 6). Plaintiff was in the first group of inmates. (*Id.*). The inmates wore leg shackles and handcuffs and were chained together with a chain connected to each set of handcuffs. (*Id.* at ¶ 5). Once they reached the recreation cages, the inmates in the second group were unchained and placed in the available recreation cages on the rear side. (*Id.* at ¶ 9). Defendant Barney attests that he then removed the chains from the first group of inmates and ordered them to proceed towards the available cages on the front side. (*Id.*).

Defendant Barney attests that once he and plaintiff were out of view of the security camera, plaintiff turned towards him and attempted to punch him with his right fist. (*Id.* at ¶ 11). Defendant Barney attests that plaintiff's hands were no longer cuffed behind him. Plaintiff missed striking defendant Barney; however, they both fell when plaintiff lunged toward him. Plaintiff landed on his right side and defendant Barney landed on his left shoulder. Defendant Barney attests that plaintiff continued to struggle and resist until he forced plaintiff face down on the sidewalk, secured plaintiff's arms behind him, and replaced the side of the handcuff that plaintiff had removed. (*Id.*).

Defendant Barney escorted plaintiff to segregation where he was charged with the disciplinary infractions of causing or attempting to cause physical harm to another, physical resistance to a direct order, and removing or escaping from physical restraints. (*Id.* at ¶ 13). Defendant Barney attests that while he was escorting plaintiff to segregation, plaintiff continued to disobey orders and turned towards defendant Barney to the point that he was directly facing him. (*Id.* at ¶ 14). Defendant Barney attests that when they entered the segregation building, plaintiff began screaming, resisting, and grabbing defendant Barney's arm, such that it was necessary for defendant Setty to assist during the remainder of the escort. (*Id.* at ¶ 15). Defendant Barney attests that while they were waiting for the strip cage to become available, plaintiff "continued to resist, scream and attempt to turn around." (*Id.*).

Defendant Setty attests that he met plaintiff and defendant Barney at the entrance to the segregation building. (Declaration of Robert Setty, Doc. 127-4, Exh. D at ¶ 4). When they entered, plaintiff began screaming and was not being compliant in walking. Defendant Setty observed plaintiff grab defendant Barney's arm with his hands at which point defendant Setty took control of plaintiff's right arm and placed his right wrist in an escort technique. (*Id.* at ¶ 5).

Defendant Setty attests that plaintiff continued to be resistant and refused several orders to keep his head toward the wall while waiting for the strip cage to become available. (*Id.* at ¶¶ 6-7).

Nurse Kathy Joiner examined plaintiff after the incident. (Declaration of Kathy Joiner, Doc. 127-3, Exh. C at ¶ 4). Nurse Joiner observed a large raised knot on the right side of plaintiff's forehead measuring 1.5 inches wide by 3 inches in length. In addition, Nurse Joiner observed three small circular raised areas down the center of plaintiff's forehead, an abrasion on plaintiff's right shoulder measuring 1.5 inches in diameter, and bilateral wrist abrasions with roughened areas. Nurse Joiner noted a small skin tear on plaintiff's right wrist measuring half an inch in diameter. (*Id.*). Nurse Joiner attests that the injuries she observed "are consistent with someone who has struck the ground on his right side, and pulled his right wrist out of a secured handcuff." (*Id.* at ¶ 5).

The day after the incident, the prison's Rules Infraction Board ("RIB") found plaintiff guilty of the disciplinary charges brought against him related to the incident. (*See* Disposition of the Rules Infraction Board, Doc. 127-6, Exh. F at 3). Specifically, the RIB stated its belief that plaintiff "did come out of his cuffs and threw a punch with his right hand at C/O Barney. [Plaintiff] was then put on the ground and was physically resisting the orders to be cuffed up." (*Id.*). The RIB imposed 15 days of disciplinary control, a review of plaintiff's security level, and 60 days of recreation restriction. (*Id.*).

### 2. Plaintiff's version

Plaintiff alleges that when he received recreation time on September 17, 2014, he had not been to recreation in over three months. (Doc. 3 at ¶ 8).[1] During that time, plaintiff wrote a grievance against defendant Barney over threats that he allegedly made against plaintiff. (*Id.*).

---

[1] Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

Plaintiff further alleges that he wrote approximately 15 to 20 grievances against defendant Barney over a 3.5 year period regarding "several foul acts" on the part of defendant Barney. (*Id.* at ¶ 19).

Plaintiff alleges that before he was transported to recreation, defendant Barney placed him in handcuffs and leg irons. (*Id.* at ¶ 10). After defendant Barney removed the chain connecting plaintiff to the other inmates, he instructed plaintiff to walk around the rear of the recreation area with the other inmates so that they could be placed in cages on the left side. (*Id.* at ¶¶ 16, 22). Plaintiff alleges that when he was halfway across the rear side of the recreation area, defendant Barney punched him in the face, which caused plaintiff's face to swell. (*Id.* at ¶¶ 23-24). Defendant Barney then allegedly slammed plaintiff to the ground, and because plaintiff was still handcuffed and shackled, he had only his right shoulder to break the fall, which caused pain and a large blister. (*Id.* at ¶ 25).

Once plaintiff was on the ground, defendant Barney allegedly slammed and smashed plaintiff's face and head into the concrete ground more than one time, causing plaintiff "severe pain" and swelling. (*Id.* at ¶ 26). Plaintiff alleges that defendant Barney again punched him in the face, causing him pain, swelling, and a cut lip. (*Id.* at ¶ 27). Defendant Barney allegedly placed his knee on plaintiff's neck and attempted to remove plaintiff's handcuffs, causing him severe neck pain. (*Id.* at ¶ 28). Plaintiff alleges that defendant Barney also kicked plaintiff twice in the ribs, which caused "slight" pain. (*Id.*). When defendant Barney was unable to remove plaintiff's handcuffs using the key, defendant Barney allegedly "tried to ya[n]k the handcuffs off, which left both wrists with several" abrasions, which caused severe pain and numbness that persisted 70 days after the incident. (*Id.* at ¶ 29). Plaintiff alleges that defendant Barney then

"returned to slamming and smashing [plaintiff's] face and head several more times," which caused severe pain and "a large raised knot on [plaintiff's] forehead." (*Id.* at ¶ 30).

After this alleged use of force, defendant Barney lifted plaintiff to his feet and walked him back along the right side of the recreation area. (*Id.* at ¶ 31). Plaintiff alleges that as they walked along the right side of the recreation area, defendant Barney "suddenly turned and rammed [plaintiff] into the steel rec-cages," causing severe pain to plaintiff's already injured face. (*Id.* at ¶ 32). Defendant Barney and an unidentified corrections officer escorted plaintiff back to the prison. (*Id.* at ¶ 34).

Plaintiff alleges that once they entered the prison hallway, he began yelling loudly in hopes of alerting prison administrative staff because his hands "felt like they were on fire." (*Id.* at ¶ 35). At that time, defendant Setty took control of plaintiff's right hand from the unidentified corrections officer and allegedly caused additional pain to plaintiff. (*Id.* at ¶ 36). Plaintiff alleges that he remained handcuffed and shackled throughout the entire incident. (*Id.* at ¶ 37). Plaintiff states he believes the assault by defendant Barney was premeditated and in retaliation for the numerous grievances plaintiff had filed against defendant Barney. (*Id.* at ¶ 39).

In support of his version of events, plaintiff has also submitted the declarations of three witnesses. (Doc. 86). First, inmate Harold McGrapth attests that he was released from the recreation chain and remained within sight of the incident until plaintiff and defendant Barney left the recreation area. (Declaration of Harold McGrapth, Doc. 86-1 at ¶ 4). Mr. McGrapth attests that he saw defendant Barney punch plaintiff in the face. (*Id.* at ¶ 6). Mr. McGrapth further attests that he saw defendant Barney "slam [plaintiff], then force his head into the concrete ground, [and] kick him while trying to remove his handcuffs." (*Id.* at ¶ 7). Mr.

McGrapth attests that he was "on the other side" of the incident but "within eyesight." (*Id.* at ¶ 8).

Second, inmate Jeremy P. Gallant attests that he is "aware of plaintiff's case" and has seen "very unethical" behavior of SOCF employees during recreation time on numerous occasions. (Declaration of Jeremy P. Gallant, Doc. 86-2 at 1). However, Mr. Gallant's declaration does not contain any indication that he personally witnessed the incident at issue in this lawsuit. (*See id.*).

Finally, inmate Jason Pope attests that after he was released from the recreation chain, he remained within sight of the incident. (Declaration of Jason Pope, Doc. 86-3 at ¶ 4). Mr. Pope attests that he saw defendant Barney punch plaintiff in the face. (*Id.* at ¶ 6). Mr. Pope further attests that he saw defendant Barney "slam [plaintiff], then force his head into the concrete ground, kick him, and try to remove [plaintiff's] handcuffs." (*Id.* at ¶ 7). Mr. Pope attests that he was "on the other side but within eyesight" of the incident. (*Id.* at ¶ 8).

### 3. Video and photographic evidence

The Court has also reviewed the available video evidence that defendants have manually submitted. This evidence shows that the inmates entered the recreation area in two groups. The first group was comprised of six inmates, and the parties agree that plaintiff was the second inmate from the front in this group when they entered the recreation area. (*See* Lovett 9-17-2014_2 at 13:30 through 13:55 on disc manually submitted to the Court). The second group was comprised of seven inmates. (*See id.*). The first group passes in front of the recreation cage then walks along the right side of the cage before coming to a stop outside the back right corner of the cage. (*See id.* at 13:30 through 15:50). While the first group stands next to the outer fencing at the back right corner of the recreation area, correctional officers unchain the inmates in the

7

second group and place them into their individual recreation cages. (*See id.* at 15:50 through 16:30). Once the second group has entered their recreation cages, the first group continues walking and turns the corner around the rear of the cages, outside the camera's view. (*See id.* at 16:30 through 17:08). At approximately 17:08, the first group completely passes outside the camera's view, accompanied by a single corrections officer, whom the parties agree was defendant Barney. (*See id.*). Approximately eight seconds later, the three other correctional officers move behind the recreation area as well, outside the camera's view. (*See id.* at 17:08 through 17:16).

Plaintiff reenters the camera's view at approximately 18:05, or less than a minute after the first group of inmates completely passed outside the camera's view. (*See id.* at 18:05). Plaintiff is walking toward the camera on the right side of the recreation area with defendant Barney walking behind plaintiff and holding his arms, which are secured behind his back in an escort position. (*See id.* at 18:05 through 18:16). A second correctional officer walks next to defendant Barney. (*See id.*).

As plaintiff and the two officers walk next to the recreation cage, defendant Barney pushes plaintiff face first against the fenced wall of the recreation cage. (*See* Lovett 9-17-2014 at 00:00 through 00:25). Plaintiff is turned around to face Officer Barney. He is then turned to again face the recreation cage and is placed face first against the fenced wall of the cage a second time. (*See id.*).

Eventually, plaintiff, defendant Barney, and the other correctional officer enter the segregation building. (*See id.* at 02:45 through 02:55). While waiting for the secure gate to open, there is some jostling between plaintiff and defendant Barney, and defendant Setty takes control of plaintiff's right arm. (*See id.* at 03:00 through 03:10).

Plaintiff and defendants walk down a hallway and then defendants Barney and Setty place plaintiff face first against the wall next to the entrance to the strip cage room. (*See id.* at 03:30 through 04:05). Defendants Barney and Setty continue to hold plaintiff against the wall for approximately 90 seconds. (*See id.* at 04:05 through 05:40). At that point there is more jostling between plaintiff and the defendants, and the defendants push plaintiff more forcefully into the wall face first and manipulate plaintiff's arms, which are still secured behind his back. (*See id.* at 05:40 through 05:50). Defendants hold plaintiff against the wall for approximately 40 more seconds before they enter the strip cage room and place plaintiff into the strip cage. (*See id.* at 05:50 through 06:40).

Finally, defendants' manually submitted evidence also contains three full color digital photographs that show the injuries to plaintiff's wrists, right shoulder, and forehead. (*See* DSC00094(2) (wrists), DSC00095(2) (shoulder), and DSC00096(2) (forehead).

### B. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving

party. *Satterfield,* 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [a video] recording remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846,

851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

### C. The law governing an Eighth Amendment excessive force claim

A convicted prisoner's right to be free from the use of excessive force by prison officials is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth Amendment claim has both an objective and subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). *See also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-21. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Wilkins*, 559 U.S. at 38-40; *Hudson*, 503 U.S. at 7.

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause

harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

### D. Analysis of plaintiff's Eighth Amendment claims

#### 1. Defendant Barney

Both plaintiff and defendant Barney have moved for summary judgment on plaintiff's excessive use of force claim against defendant Barney. Given the parties' conflicting versions of the events that occurred on September 17, 2014, summary judgment is not warranted for either party.

The parties have submitted contradictory eyewitness accounts of the confrontation between plaintiff and defendant Barney which occurred behind the recreation cages and outside the view of the prison's security cameras. Under defendant Barney's version, plaintiff removed his own handcuffs, attempted to punch defendant Barney, and lunged toward defendant Barney, which caused them both to fall and strike the ground. (*See* Doc. 127-2, Exh. B at ¶ 11). Defendant Barney does not dispute he used physical force against plaintiff, but he asserts the force used was only enough to restore order and subdue plaintiff. In addition, defendant Barney's evidence suggests that the injuries plaintiff sustained to his head, shoulder, and wrists resulted from falling and striking the ground after plaintiff attacked defendant Barney, and not from any alleged use of force by defendant Barney.

On the other hand, plaintiff's evidence presents a different version of the incident with defendant Barney. According to plaintiff's verified complaint and the declarations of Mr. McGrapth and Mr. Pope, defendant Barney initiated the physical altercation by punching

plaintiff in the face while plaintiff was restrained in handcuffs and leg irons and when plaintiff was behind the recreation cages and outside the view of the security cameras. Plaintiff's evidence indicates that the injuries to his head, shoulder, and wrists were caused by defendant Barney when he slammed plaintiff to the ground, smashed plaintiff's face into the concrete, kicked plaintiff, and attempted to remove plaintiff's handcuffs. (*See* Doc. 3 at ¶¶ 23-30; Doc. 86-1 at ¶¶ 6-7; Doc. 86-3 at ¶¶ 6-7). According to plaintiff's evidence, the use of force by defendant Barney was not in good faith for a legitimate penological purpose, but was in retaliation for the numerous grievances plaintiff filed against defendant Barney. Under plaintiff's version of events, there was no justification whatsoever for defendant Barney's use of force.

Given the conflicting evidence presented by the parties, there is a genuine issue of fact as to whether the force used by defendant Barney on plaintiff was in a good-faith effort to restore discipline or was applied maliciously and sadistically with the intent to cause harm. *See Cordell*, 759 F.3d at 581. Contrary to defendants' argument, the evidence in this case is not so one-sided that no reasonable jury could find in favor of plaintiff. (Doc. 114 at 5). Defendant Barney contends that it was he, and not plaintiff, who suffered a serious injury as a result of the incident.[2] However, the Court cannot say that the multiple injuries sustained by plaintiff to his head, shoulder, and wrists are *de minimis* for Eighth Amendment purposes. *Hudson*, 503 U.S. at 10. While defendants also contend that defendant Barney's use of force was justified and appropriate because "[p]laintiff had physically assaulted Officer Barney and refused to follow direct orders" (Doc. 114 at 5), plaintiff's evidence directly contradicts defendant Barney's attestation that plaintiff removed his own handcuffs and attacked defendant Barney. Plaintiff's

---

[2] Defendant Barney alleges he was required to take an extended medical leave for an injury to his shoulder as a result of the fall with plaintiff. (Barney Declaration, Exhibit B, ¶ 16).

verified complaint and witness declarations indicate that defendant Barney initiated the altercation by punching plaintiff in the face, and then proceeded to slam plaintiff, force his head into the ground, kick him, and try to remove his handcuffs. (*See* Doc. 3 at ¶¶ 23-30; Doc. 86-1 at ¶¶ 6-7; Doc. 86-3 at ¶¶ 6-7).[3]  To credit defendant Barney's version of events over those of plaintiff and his witnesses would require the Court to weigh the evidence and assess the credibility of the witness statements, which the Court is not permitted to do on summary judgment. *See Anderson*, 477 U.S. at 249.  Plaintiff has presented sufficient evidence to create an issue of fact for resolution by the jury at trial.  While a reasonable jury could ultimately credit defendant Barney's evidence and find that the force used by defendant Barney was reasonable under the circumstances, a jury could also determine that defendant Barney's use of force was without provocation and the type and amount of force used was unnecessary if plaintiff's evidence is credited. *See Hudson*, 503 U.S. at 7.  The evidence is not so one-sided in this case that a fair minded jury could not return a verdict for plaintiff on his Eighth Amendment excessive force claim.  Considering the conflicting evidence of the reasons for defendant Barney's use of force, the type and amount of force use, and the extent of the injury inflicted, *see Whitley*, 475 U.S. at 320-22, there are disputed issues of material fact such that both plaintiff's motion for summary judgment and defendant Barney's motion for summary judgment should be denied.

---

[3] Defendants urge the Court to discount the statements of Mr. McGrapth and Mr. Pope by suggesting that they were not the inmates "closest to Plaintiff" but were instead "on the other side of the recreation area." (Doc. 129 at 3). As indicated above, defendants' argument requires the Court to weigh the evidence and make credibility determinations, which the Court is prohibited from doing when ruling on a motion for summary judgment. *See Anderson*, 477 U.S. at 249. Defendants provide one plausible interpretation of Mr. McGrapth and Mr. Pope's statements that they were "on the other side" of the incident. However, this is not the only plausible interpretation, particularly given the witnesses' statements that they remained "within eyesight" of the altercation, and the Court may not credit defendants' interpretation over plaintiff's in ruling on a motion for summary judgment. *See id.*; (Doc. 86-1 at ¶ 8; Doc. 86-3 at ¶ 8). In any event, both Mr. McGrapth and Mr. Pope state they were within eyesight of the incident and observed defendant Barney punch plaintiff and slam him to the ground. This version contradicts defendant Barney's version, creating a genuine issue of material fact for jury resolution such that defendants' motion for summary judgment should be denied as to plaintiff's claim against defendant Barney.

*2. Defendant Setty*

As to defendant Setty, defendants' motion for summary judgment should be granted because there are no genuine issues of fact that defendant Setty did not use excessive force against plaintiff.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). A *de minimis* use of physical force does not violate the Eighth Amendment's prohibition against cruel and unusual punishment "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (citing *Hudson*, 503 U.S. at 9).

Plaintiff has failed to come forward with competent evidence creating a genuine issue of fact on his excessive use of force claim against defendant Setty. In his verified complaint, plaintiff's sole allegation against defendant Setty is that upon entering the segregation building with defendant Barney, "C/O John Doe gives way to Lt. Setty who then maintains the hold on my right hand. Lt. Setty caused additional pain." (Doc. 3 at ¶ 36). Beyond this bare allegation, plaintiff has produced no evidence in support of an excessive force claim against defendant Setty.

The video evidence shows that once defendant Barney and plaintiff entered the segregation building and waited for the secure gate to open, there was some jostling between plaintiff and defendant Barney and defendant Setty took control of plaintiff's right arm. (*See* Lovett 9-17-2014 at 03:00 through 03:10). Defendant Setty attests that upon entering the segregation building, plaintiff was screaming, he did not comply with walking, and he grabbed

defendant Barney's arm with his hands. (Declaration of Robert Setty, Doc. 127-4, Exh. D at ¶ 5). At that point, defendant Setty took control of plaintiff's right arm and placed his right wrist in an escort technique. (*Id.*). Plaintiff was escorted to the strip cage area and defendant Setty assisted defendant Barney in placing plaintiff face first up against the wall next to the entrance to the strip cage room. (*See* Lovett 9-17-2014 at 03:30 through 04:05). Plaintiff continued to resist and refused several direct orders to keep his head toward the wall while waiting to enter the strip cage. (Declaration of Robert Setty, Doc. 127-4, Exh. D at ¶¶ 6-7). Plaintiff was held against the wall for approximately 90 seconds and then pushed more forcefully into the wall face first while the officers manipulating his arms. (*See id.* at 04:05 through 05:50). The commotion that occurred by the strip cage was sufficient to draw the attention of another prison guard in the immediate vicinity. (*See id.*). Plaintiff was held against the wall by the officers for approximately 40 more seconds before being placed in the strip cage. (*See id.* at 05:50 through 06:40).

Viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that defendant Setty used excessive force against plaintiff. Plaintiff has failed to present any evidence disputing defendant Setty's evidence that plaintiff was belligerent and non-compliant when he arrived at the segregation building with defendant Barney where Setty first encountered plaintiff. No reasonable jury could find that the force used by defendant Setty in taking control of plaintiff's right arm and placing his right wrist in an escort technique constituted more force than necessary to assist defendant Barney in escorting plaintiff to the strip cage. Nor has plaintiff alleged any discernible injury from this use of force. *See id.* at 38; *Hudson*, 503 U.S. at 7. Plaintiff has failed to present evidence creating a genuine issue of fact as to whether defendant Setty's actions at the entrance of the segregation unit constitute only *de minimis* force,

16

which does not establish a violation of plaintiff's Eighth Amendment rights. *See Wilkins*, 559 U.S. at 37-38.

As to the use of force by defendant Setty outside the entrance to the strip cage room, plaintiff has not presented evidence creating a genuine issue of fact as to whether the force used by defendant Setty was reasonable and appropriate under the circumstances. Plaintiff's response in opposition to defendant Setty's motion for summary judgment does not call into question the evidence showing that plaintiff continued to resist the officers while outside the strip cage and refused several direct orders to keep his head toward the wall while waiting to enter the strip cage. The force used to secure plaintiff and keep him against the wall was *de minimis* and prison officials are permitted to use a reasonable amount of force to subdue an unruly inmate. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (holding that shoving, grabbing, and bending back two of prisoner's fingers required only minimal force "and was reasonably related to the need for forcibly bringing [prisoner] under control and returning him to his cell"); *Johnson v. Unknown Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004) (denying excessive force claim where defendants pushed prisoner into his cell, pulled hard on his restraints, hurt his wrists, and tried to bend his thumb back, all in a "legitimate attempt to return him to his cell"); *Williams v. Johnson*, 55 F. App'x 736, 736-37 (6th Cir. 2003) (denying excessive force claim where prisoner was being argumentative and defendant grabbed his arm and attempted to shove him into a closed door, which was determined to be a *de minimis* use of force that was reasonably related to a security need). Moreover, plaintiff has not alleged any discernible injury from this use of force; instead, he alleged that his discernible injuries were a result only of defendant Barney's actions during and immediately after the alleged incident behind the recreation cages. (*See* Doc. 3 at ¶¶ 24-30, 32, 36). Plaintiff has failed to satisfy his burden on summary judgment to

establish a material issue of fact for resolution by the jury on his claim against defendant Setty. There is no genuine dispute of fact that defendant Setty's use of force does not establish an Eighth Amendment claim and defendants' motion for summary judgment should be granted as to plaintiff's excessive force claim against defendant Setty.

### E. Qualified immunity

In analyzing whether a prison official is entitled to qualified immunity, the Court asks "whether a constitutional right would have been violated on the facts alleged" and "whether the right at issue was clearly established at the relevant time." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020 (2014). As noted above, the Court concludes that genuine issues of material fact exist from which a reasonable jury could determine that defendant Barney violated plaintiff's Eighth Amendment rights. Thus, the Court must assess whether those Eighth Amendment rights were clearly established at the time of the incident. In other words, would a reasonable official in defendant Barney's position have understood that under the particular circumstances presented, he was violating the Eighth Amendment. *Cordell*, 759 F.3d at 587-88.

Defendants argue they are entitled to qualified immunity because they "used less than the amount of force they were authorized to use." (Doc. 127 at 12). However, granting defendant Barney qualified immunity based on the evidence before the Court would require the Court to credit his version of events over that of plaintiff's and resolve the factual issues identified above in defendant's favor, which the Court may not do on summary judgment. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). Plaintiff's evidence shows that defendant Barney initiated the altercation by punching plaintiff in the face, slamming plaintiff to the ground, forcing plaintiff's head into the ground, kicking plaintiff, and attempting to remove plaintiff's handcuffs. (*See* Doc. 3 at ¶¶ 23-30; Doc. 86-1 at ¶¶ 6-7; Doc. 86-3 at ¶¶ 6-7). Accepting plaintiff's account as true

and drawing all reasonable inferences therefrom in plaintiff's favor, as the Court must in ruling on defendants' motion for summary judgment, plaintiff demonstrates a colorable claim of excessive use of force in violation of his Eighth Amendment rights. "[I]f there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable jail official would have known such conduct was wrongful." *Cordell*, 759 F.3d at 588 (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 642 (6th Cir. 2001)). Accordingly, defendant Barney should not be found entitled to qualified immunity on plaintiff's Eighth Amendment claim.

### F. *Heck v. Humphrey*

Finally, defendants argue that the Court should grant summary judgment in their favor because plaintiff's claims are barred under *Heck* as a judgment in his favor would necessarily imply the invalidity of the RIB's finding that he had violated prison rules. (Doc. 127 at 12-13; Doc. 127-6, Exh. F at 3). In *Heck*, the Supreme Court held that a § 1983 suit is not cognizable if it would "necessarily" invalidate the plaintiff's conviction or sentence, unless the plaintiff can show the conviction or sentence had been set aside. *Heck*, 512 U.S. at 487. In support of their argument that plaintiff's suit is *Heck*-barred, defendants cite to an unpublished Sixth Circuit opinion for the proposition that "*Heck v. Humphrey* might bar suit when a prisoner's Rules Infraction Board convictions impacted the duration of his confinement, as occurs under Ohio law." (Doc. 127 at 13) (citing *Bell v. Wilkinson*, 145 F. App'x 169, 170 (6th Cir. 2005)).

However, the Supreme Court has held that *Heck* is not automatically implicated by a suit that impacts a conviction in a prison disciplinary proceeding, absent evidence of the impact on the length of a prisoner's sentence. *See Muhammad v. Close*, 540 U.S. 749, 751-52 (2004) (*per curiam*). The Court explained that "[t]he assumption is that the incarceration that matters under

*Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Id.* at 751 n.1. Further, in *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005), the Supreme Court concluded that the term "sentence" as used in *Heck* referred to "substantive determinations as to the length of confinement."

Here, the Court concludes that plaintiff's claim against defendant Barney is not *Heck*-barred. First, as a result of the RIB decision, plaintiff received 15 days of disciplinary control, a review of his security level, and 60 days of recreation restriction. (*See* Doc. 127-6, Exh. F at 3). While defendants make the conclusory assertion that under Ohio law, an RIB conviction can impact the duration of confinement, they have failed to produce any evidence that the length of plaintiff's confinement has increased as a result of this RIB decision. (*See* Doc. 127 at 13). Further, on its face, the RIB decision affects only the conditions of plaintiff's confinement not its length. Thus, because defendants have offered no evidence to reflect that plaintiff's placement in disciplinary control for 15 days and recreation restriction for 60 days impacted the duration of his confinement, any collateral attack on the RIB conviction through this lawsuit does not necessarily imply the invalidity of plaintiff's continued confinement or imprisonment such that *Heck* does not apply. Accordingly, defendants' argument that plaintiff's claims are *Heck*-barred should be rejected.

## III. Conclusion

Based on the foregoing, plaintiff's motion for a hearing (Doc. 130) is **DENIED**. Further, it is **RECOMMENDED** that:

1. plaintiff's motion for summary judgment (Doc. 108) be **DENIED**; and

2. defendants' motion for summary judgment (Doc. 127) be **GRANTED** as to plaintiff's

claim against defendant Setty but **DENIED** as to his claim against defendant Barney.


Date: _11/17/16_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KELVIN LOVETT,                                          Case No: 1:15-cv-24
    Plaintiff,                                       Barrett, J.
                                                 Litkovitz, M.J.

    vs.

BRIAN BARNEY, et al.,
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

22